IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. 2:07-00044-2

KEITH PAUL

<u>MEMORANDUM OPINION AND ORDER</u>

On February 11, 2008, the defendant appeared in person and by counsel, Nicholas S. Preservati, and the government appeared by Assistant United States Attorney Monica L. Dillion.  The subject of the hearing was defendant's pending pretrial motions. (Doc. Nos. 44, 47-51, 78, 79, 96, 99, 100.)

The court first heard testimony and argument with regard to defendant's Motion to Dismiss and/or Suppress Evidence (Doc. No. 44), and defendant's Supplemental Motion to Suppress Evidence (Doc. No. 99), but reserved ruling on the motions.  For the reasons set forth below, the court now **DENIES** both the motion to dismiss and/or suppress and the supplemental motion.

The court next addressed the defendant's Motion to Exclude 404(b) Evidence (Doc. No. 78), and Motion in Limine (Doc. No. 98).  In accord with the court's typical procedure, the court will take these motions under advisement until trial, which is scheduled for February 26, 2008.

The court finally addressed the defendant's numerous discovery motions.  (Doc. Nos. 47-51, 79, 96, 100.)  Although most of the discovery motions were resolved, and therefore **MOOT**

(Doc. Nos. 47-49, 51, 96), the court was informed that
defendant's request for the criminal history of Kenneth Dolan
(Doc. No. 79), and defendant's requests for information relating
to the confidential informant (Doc. Nos. 51, 79, 100) were
unresolved.  Because the government does not intend on calling
either Kenneth Dolan or the confidential informant as a witness,
defendant's requests are **DENIED** pursuant to Rule 16 of the
Federal Rules of Criminal Procedure.

## I. Background

Defendant was charged in a three-count superseding
indictment returned on January 3, 2008.  (Doc. No. 80.)  Count
One charges that Keith Paul, aided and abetted by another,
manufactured a quantity of methamphetamine in violation of 21
U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  (Id.)  Count Two charges
that Keith Paul, aided and abetted by another, intentionally
possessed red phosphorous and pseudoephedrine knowing the
chemicals would be used to manufacture methamphetamine in
violation of 21 U.S.C. § 841(c)(2) and 18 U.S.C. § 2.  (Id.)
Count Three charges that Keith Paul committed the violations
alleged in Counts One and Two while children under the age of 18
were present, thereby violating 21 U.S.C. § 860a.  (Id.)

At the February 11 hearing, Detective Clark A. Greene of the
Metropolitan Drug Enforcement Network Team ("MDENT") gave the
following case history in his testimony to the court:

-2-

(1) on June 26, 2006, Detective Greene received detailed and reliable information from a "CI" that Mr. Paul was operating a methamphetamine lab in his residence, (2) the "CI," escorted by Detective Greene, identified the residence as 1307 ½ Beech Street, Charleston, West Virginia, (3) on June 28, 2006, Detective Greene and four other police officers went to the residence to conduct a "knock and talk," (4) upon stepping onto the front porch Detective Greene immediately smelled a strong odor consistent with the production of methamphetamine, (5) after knocking on the door Detective Greene informed Mr. Paul that he was a police officer and that he needed to speak with him, (6) Mr. Paul exited from the basement where he was met by Detectives Wolfe and Armstrong, (7) Mr. Paul did not consent to a search of the residence, (8) Mr. Paul, however, requested that he be permitted to go back into the residence to get clothes for himself and a minor child who was with him, (9) Mr. Paul stated that there were no other people in the residence, (10) the detectives escorted Mr. Paul back into the residence and upon reaching the ground floor encountered two adults, (11) at that time the detectives conducted a protective sweep of the residence, (12) during the sweep the detectives observed several items consistent with the production of methamphetamine, (13) Detective Greene then left the premise to secure a search warrant, (14) the affidavit was based on the information received from the CI, the strong chemical odor at the door of the residence, and the items consistent with the manufacturing of methamphetamine observed while sweeping the residence for "officer safety reasons," (15) Magistrate Judge Julie Yeager issued a search warrant which the detectives then executed, (16) methamphetamine and numerous items and chemicals used to manufacture methamphetamine were seized, and (17) the chemicals and items were sampled, pictured, and destroyed by a hazardous waste removal team in accord with what the detectives believed to be standard procedure.

Detectives Van Armstrong and Michael Wolfe also gave testimony corroborating Detective Greene's recitation of the facts.

## II.  Analysis

Defendant moves the court for an Order dismissing the superseding indictment or in the alternative suppressing all

physical evidence.  (Doc. Nos. 44, 99.)  Although the defendant withdrew several grounds for dismissal and/or suppression, two grounds remain.  (Doc. No. 97.)

**A.   Destruction of Evidence**

The Supreme Court in <u>California v. Trombetta</u>, 467 U.S. 479 (1984), "set forth the framework for assessing whether the destruction of evidence deprived the defendant of due process of law." <u>Trombetta</u> required defendants to prove that destroyed evidence was "constitutionally material," meaning that the evidence possessed "an exculpatory value that was apparent before the evidence was destroyed" and which was of "such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  467 U.S. at 489.  In <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988), the Court further held that where lost or destroyed evidence is deemed to be only potentially exculpatory, as opposed to apparently exculpatory, the defendant must show that the evidence was destroyed in bad faith.

In the instant case the chemicals and items[1] seized were sampled and pictured, and then destroyed by a hazardous waste

---

[1]  A plastic bag containing coffee filters, an empty gallon of Coleman fuel, several razor blades, a set of metal scales, a piece of rubber tubing, a jug of iodine, a propane cylinder with a torch, four unopened boxes of cold medicine, a plastic bag containing matchbooks minus striker plates, an empty lye bottle, and an aquarium pump.

removal team.  Defendant claims that the destroyed evidence was exculpatory because there were two other persons in the residence at the time of arrest, and the fingerprints or lack thereof would have proved his innocence.

In this case, the court does not believe that the exculpatory nature of the destroyed evidence was apparent.  See, e.g., United States v. Beckstead, 500 F.3d 1154, 115-58 (10th Cir. 2007) (rejecting defendant's argument that fingerprint evidence on items found in methamphetamine lab has apparent exculpatory value); United States v. Bloomgren, No. 00-8036, 2002 WL 1316504 *3 (10th Cir. June 18, 2002) (holding that fingerprint evidence did not have apparent exculpatory value); Holdren v. Legursky, 16 F.3d 57, 60 (4th Cir. 1994)(no constitutional violation in failing to preserve fingerprint items found at the scene).  Rather the court finds that the evidence destroyed in this case was potentially exculpatory.

Thus, under Youngblood, the defendant had the burden of proving bad faith.[2]  488 U.S. at 58.  After listening to

---

[2]  The Fourth Circuit has not provided district courts with a test for determining whether the destruction of potentially exculpatory evidence was motivated by bad faith.  See United States v. Varner, No. 5:05-cr-00025, 2006 WL 733962, *5 n.4 (W.D. Va. Mar. 20, 2006).  The Tenth Circuit, however, has identified five factors it found useful: (1) was the government placed on notice that defendants believed the evidence to be exculpatory; (2) was defendant's assertion that the evidence was potentially exculpatory supported with objective evidence; (3) did the government still have the evidence within its control when it received notice from the defendants about the evidence's

-5-

defendant's argument and the testimony of the detectives, the court finds that defendant failed to meet his burden.  None of the factors stated in <u>Bohl</u> indicate bad faith on the part of the detectives.  Moreover, all three detectives testified that it is standard procedure to have the chemicals and items associated with a methamphetamine lab destroyed by a hazardous waste management team.  <u>United States v. Barton</u>, 995 F.2d 931, 936 (9th Cir. 1993) (compliance with departmental policy concerning the destruction of evidence is evidence of good faith), <u>cert. denied</u>, 510 U.S. 957 (1993).

Accordingly, the court rejects defendant's argument that the destruction of evidence warrants dismissal.

## B.   Invalid Search Warrant

In support of his motion for suppression of all physical evidence, defendant argues that the search warrant was defective because its issuance was based upon evidence obtained during an unlawful "protective sweep" of the Beech Street residence.  (Doc. Nos. 44, 99 (focusing exclusively on whether the "protective sweep" of the Beech Street residence was lawful).)  Consequently,

---

exculpatory value; (4) was the evidence disposed of central to the government's case; and (5) did the government offer an innocent explanation for its failure to preserve the evidence. <u>United States v. Bohl</u>, 25 F.3d 904, 911-12 (10th Cir. 1994).

defendant's argument merely "assumes" that without the observations made during the "protective sweep," the search warrant would not have been issued.

When the validity of a search warrant has been challenged the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant. Massachusetts v. Upton, 466 U.S. 727, 728 (1984). Where improper or otherwise tainted evidence is used to obtain a search warrant, this fact will not invalidate the search warrant so long as there is enough untainted information to support probable cause. United States v. Wright, 991 F.2d 1182, 1186 (4th Cir. 1993) (citing United States v. Whitehorn, 813 F.2d 646, 649 (4th Cir. 1987), cert. denied, 487 U.S. 1234 (1988)); compare with Murray v. United States, 487 U.S. 533, 537-41 (1988)(under the "independent source" doctrine, when police discover a particular fact by illegal means but later acquire knowledge of that same fact by independent legitimate means, evidence of that fact is not excludable as fruit of the police misconduct).

In the instant case, it is irrelevant whether the observations made during the protective sweep constitute tainted evidence. The search warrant stands solely on the basis of the CI's initial and corroborating statements, and Detective Greene's

identification of a "strong odor consistent with the production of methamphetamine" while conducting a proper "knock and talk." It has been the rare case in which the Fourth Circuit has found a search warrant based on an informant tip to be inadequate, particularly where the information has been corroborated.  See, e.g., United States v. Hodge, 354 F.3d 305, 309-11 (4th Cir. 2004); United States v. Lalor, 996 F.2d 1578 (4th Cir. 1993); see also Alabama v. White, 496 U.S. 325, 331-32 (1990).

Accordingly, the court rejects defendant's argument that all physical evidence should be suppressed.[3]

## III.  Conclusion

---

[3]  As a side note, the court finds that United States v. Mowatt, No. 06-4886, 2008 WL 203581, *1 (4th Cir. Jan. 25, 2008), is distinguishable from the facts of this case.  There, police received a complaint that loud music and the smell of marijuana were emanating from a tenth-floor apartment.  (Id.)  The officers attempted a "knock and talk" solely to resolve the noise complaint, but Mowatt refused to open the door.  The officers "then became demanding, repeatedly ordering him to open it."  In compliance with the officer's orders, Mowatt opened the door 12-13 inches and asked if the officer had a warrant, which they did not.  At that point, suspecting that Mowatt had a weapon, the officers forced there way into the apartment, handcuffed Mowatt and conducted a protective sweep whereby they seized a loaded .357 revolver and several hundred ecstasy pills.  The officers then called for a search warrant which was issued.  The primary distinction between Mowatt and the case at bar is that in Mowatt "the government never maintained that the officers would have sought a warrant absent their prior illegal discovery of the revolver and ecstasy."  (Id. at 7.)  In this case the detectives decided to seek a search warrant prior to the alleged illegal search.  Thus, the illegal search in Mowatt affected the officers decision to seek a warrant, while the alleged illegal search in the instant case did not.

-8-

For the reasons set forth above, the court **DENIES** defendant's motions to dismiss and/or suppress evidence (Doc. Nos. 44, 97, 99), **DENIES** as **MOOT** the resolved discovery motions of defendant (Doc. Nos. 47-49, 51, 96), and **DENIES** the unresolved discovery motions of defendant (Doc. No. 79, 100).

The Clerk is directed to send copies of this Memorandum Opinion and Order to counsel of record and to the Probation Office of this court.

It is **SO ORDERED** this 19th day of February, 2008.

ENTER:

David A. Faber
United States District Judge